## J. M. PORTER, Appellant, v. LYDIA A. TRACEY et al., Appellees.

**WILLS:** Construction—Repugnant Provisions—Fee Coupled With
1 Limitation on Sale.   A testator may devise a fee and validly
prohibit, for a reasonable time, the sale thereof, except by unan-
imous consent of the devisees.   So held where the fee estate
devised was small, where the devisees, some of whom were
minors, were 70 in number, and where a partition in kind was
impracticable.

**WILLS:** Construction—General Principles.   The following princi-
2 ples for the construction of wills are recognized and applied:
    1. That a devisee acquires no interest in a devise until the
death of the testator.
    2. That a codicil will be treated as though it had been bodily
written into the original will.
    3. Between different constructions of a will, that construc-
tion which works validity will be applied, rather than one which
works invalidity.

4. Partial restraint on sale is not repugnant to the devise of a fee.

**WILLS:** Construction—Words and Phrases—"Desire." The term
3 "desire" may, in a testamentary devise, have the force and effect of a specific mandatory direction.

**WILLS:** Requisites and Validity—Restraint on Alienation—Non-
4 necessity for Trustees. Temporary restraints on the alienation of a devised fee, the title to which is in no manner suspended, create no necessity for a trusteeship during the period of re-strained alienation.

*Appeal from Jasper District Court.*—K. E. WILLCOCKSON, Judge.

WEDNESDAY, MAY 16, 1917.

ACTION in equity for partition of real estate. Defendants' demurrer to the petition having been sustained, plaintiff appeals.—*Affirmed.*

*E. J. Salmon* and *George C. Kipp,* for appellant.

*E. C. Ogg* and *Clements & Clements,* for appellee.

WEAVER, J.—On February 7, 1914, one
1. WILLS: construction: repugnant provisions: fee coupled with limitation on sale. A. J. Porter died, seized in fee of certain described lands in the state of Iowa. His will, dated December 14, 1911, provided for the distribution of his estate as follows:

1. Payment of debts and charges against his estate.

2. Bequest of $1,000 to his great niece, Marguerite Tracey.

3. Subject to the foregoing provisions, he devised one ninth of his entire estate to his half brother, Silas Porter; one ninth to the heirs of his half brother, Jared Porter; one ninth to the heirs of his sister, Nancy Yearous; one ninth to the heirs of his brother, James Porter; one ninth in equal parts to two named daughters of his brother, Isaac Porter; one ninth to the heirs of his brother, Caspar

Porter; one ninth to the heirs of his brother, Philip Porter; one ninth to the heirs of his sister, Tamar Beggs; and one ninth to the heirs of his brother, William Porter.

On July 12, 1912, the testator executed a codicil to the foregoing will, providing as follows:

1. Directing the executors to pay a certain promissory note made by Ella A. Tracey to the Monroe National Bank and signed by himself as surety, and that the said Ella A. Tracey be released from any and all claims, direct or indirect, in favor of the testator or his estate.

2. A bequest to Ella A. Tracey of all his household goods and kitchen furniture.

3. Changing the devise made in the will in favor of two named daughters of his brother Isaac Porter so as to give another daughter, Sarah Rosenow, a one-third part of such devise.

4. The fourth and last paragraph of the codicil is in the following form:

"I desire that none of the real estate of which I die seized be sold for at least five years after my death, unless all legatees under my said will shall sign a written agreement or consent to said sale."

The testator died February 7, 1914, after which the will and codicil were duly admitted to probate. On July 12, 1915, the plaintiff, James Porter, the son and only heir of Caspar Porter, deceased, named in said will, began this action for partition of the lands owned by the testator, A. J. Porter, at the time of his decease. The petition impleaded as defendants all the persons appearing to be entitled to any interest in said property under the terms of said will, and set forth the fractional shares or parts thereof owned or held by each of said individuals, claiming for himself, as the sole heir and representative of Caspar Porter, an equal one-ninth part. He further alleges that the property cannot be equitably divided in kind, and asks that

a sale thereof be ordered, and that the proceeds, less attorney's fees and costs, be distributed to the several legatees in proportion to their respective shares. To this action, all the defendants, except two minors and Lydia A. Tracey, a daughter and heir of Tamar Beggs', deceased, mentioned in said will, made default. Lydia A. Tracey appeared in the proceeding and demurred to the petition generally, and, the court having sustained the demurrer and entered judgment against plaintiff for costs, he prosecutes this appeal.

I. Stated briefly, the position of the appellant is that the will as originally written gave to the devisees a fee simple or absolute title, and that the clause of the codicil delaying a sale of the property for five years is at best a merely precatory provision which, "if it be construed as a restriction upon alienation during the period named, is inconsistent with the estate granted in the body of the will, and therefore void and of no effect."

2. WILLS : construction : general principles.

In support of this argument, we are cited to the familiar authorities that a grantor or devisor of a fee cannot burden it with restraints upon its alienation, or in other words, he cannot devise an absolute estate in land and at the same time limit or restrict the devisee's right of sale, which is one of the essential elements of absolute ownership. He cannot give the whole and withhold part. The authorities to this effect are quite universally followed by the courts, and we need not take time to collate or discuss them. The serious inquiry in this case is whether the devise is within the rule so established; or, in other words, whether there is any insuperable repugnancy in the terms of the will, when read and construed as a whole in accordance with the apparent intent of the testator.

Counsel for appellant seem to treat the will and the subsequent codicil thereto as distinct and separate instruments, and say that the will as first executed devises an

absolute fee, while the fourth clause of the codicil is a man-
ifest attempt to burden such fee with a limitation upon the
devisees' right to alienate the property. We think, how-
ever, that the will and codicil must be read together as
one instrument. When the codicil was made, neither the
plaintiff nor any of the devisees had acquired any right or
interest or estate under the will. The testator had the right
to revoke or destroy it or to change or amend its terms and
attach any legal condition or restriction to the estate he
proposed to bestow upon his devisees. He speaks of the
codicil as an "amendment" to his will, and such, indeed, it
is. Taking the instrument as a whole, it is to be read and
considered precisely as if the provision of Paragraph 4 of
the codicil had been attached to the devise in its original
form. To arrive at the apparent intent and thought of
the testator, we must, as we have already suggested, look at
the will as amended in all its parts, reading it in the light
of the circumstances attending its making, so far as they
are revealed by the pleading demurred to. He appears to
have had neither wife nor direct heirs, and was endeavor-
ing to distribute his bounty with a considerable degree of
equality to his nearest collateral relatives, one brother and
the descendants of his deceased brothers and sisters. His
landed property was comparatively small, and the number
of his beneficiaries large, being about 70, as the record
shows. None of the fractional interests provided for in the
will exceeded one ninth, while some did not exceed a one
hundred and sixty-second part. He knew that a partition
or division of the land in kind was impracticable, and that
such partition could not be effectively accomplished except
by sale. Several of his beneficiaries were minors. It
may well have been that he believed that the natural in-
crease in the value of the property and the advance toward
maturity of his minor devisees made the postponement of
sale and partition for a few years a precaution which would

serve the best interests of all concerned.  Such provision, if otherwise lawful, was clearly not unreasonable.  And this, we think, is the sale which the testator intended by the provision in the codicil to postpone.  Such conclusion is entirely consistent with the testamentary language employed; and it is, moreover, a well-established rule that, if any testamentary provision be open to two constructions, one of which would render it void or inoperative, and another which would render it valid, the latter is always to be taken and the former rejected, and, wherever it is reasonably possible, effect will be given to every clause and word of the writing.  We have, then, to ask whether a provision of a will temporarily postponing the sale and partition of lands which the same instrument gives to two or more beneficiaries in common is so repugnant to the estate devised that it must be held void.  That there are authorities which so hold, we think will have to be admitted, but, in our judgment, the greater weight supports the other view.  Such a provision in a will is not in restraint of alienation in the true sense of the word, for each tenant in common may convey his share at pleasure.  Nor does it prevent a beneficial enjoyment of its profits.  *Hunt v. Wright,* 47 N. H. 396.  The law does not inhibit conditions upon the conveyance or devise of a fee so long as such conditions are not of a character to destroy or nullify the very estate with which the grantor or devisor undertakes to clothe the grantee or devisee.  This aspect of the question before us is very fully considered by the Massachusetts court, speaking by Parker, J., in *Gray v. Blanchard,* 8 Pick. 284.  After citing the rule which avoids conditions repugnant to a grant, the court says:

"But if the condition be that the grantee shall not alien to any particular persons, or within a reasonable limited period, these conditions shall stand, not being inconsistent with the nature of the estate granted.  Coke-Litt. 223. * * *

Partial and temporary restrictions as to the use may be consistent with the estate granted."

Still more directly in point is the following from Gray's Restraints on Alienation of Property (2d Ed.), Sec. 30:

"Whatever the true doctrine may be, a prohibition against partition is not a restraint on alienation, as the undivided share is always assignable."

In *Hunt v. Wright,* supra, the court also quotes from Platt on Covenants, 404, as follows:

"A grantor, when he conveys an estate in fee, cannot annex a condition to his grant absolutely restraining alienation; * * * such restrictions being imposed on him to prevent perpetuities; but short of that restriction, both parties may model it in what manner they please."

Possibly the quoted declaration is overbroad, but it may be stated much less sweepingly and still sustain the devise in this case, including the temporary restraint on enforced partition. Quite in point with the case at bar is the case of *Peterson v. Damoude,* (Neb.) 152 N. W. 786. The will there under consideration devised land to the testator's wife for life, and thereafter to his 13 children, adding to the devise the following, "provided, however, that said real estate shall not be disposed of nor divided among my children prior to the 5th day of October, 1921." It will be seen that the condition that the property "shall not be disposed of or divided" is even a more comprehensive restriction than the one with which we have to deal, but the court reaffirms and sustains the rule of the authorities above cited, holding that such restriction is not within the rule against repugnancies. In *Dee v. Dee,* 212 Ill. 338, 354, the court holds that, while "the general rule is that an adult tenant in common may demand partition as a matter of right, * * * equity will not award partition at the suit of one in violation of his own agreement, or in violation of a condition or restriction imposed upon the estate by one

through whom he claims; * * * nor is such a condition in the instrument conveying the estate invalid, as repugnant to the estate granted, or as against public policy." This precedent was followed and affirmed by the same court in *Heininger v. Meissmer*, (Ill.) 103 N. E. 565.

In *Springer v. Savage*, 143 Ill. 301, the testator devised his lands in express terms to his sons and daughters, and then, after some directions as to the method of arriving at an estimate of values for the purposes of distribution, he added a provision as follows:

"I want it positively understood that my landed estate * * * shall not be sold, under any consideration whatever, as long as any one or more of my sons or daughters remain single and desire to make it their home, unless so agreed by them."

Because of this restriction, the court refused to enforce partition. See, also, *Kepley v. Overton*, 74 Ind. 448; *Hill v. Jones*, 65 Ala. 214; *Leyrer's Estate*, 17 Pa. Co. Ct. 132; *Young v. Young*, (Ky.) 49 S. W. 1074; *Cahill v. Cahill*, 62 N. J. Eq. 157; *Wells v. Houston*, (Tex.) 56 S. W. 233.

We are, therefore, disposed to hold that the will and codicil in this case are to be construed as a single instrument, and that, when so construed, it operates to vest the devisees with the title to the property as tenants in common, subject, however, to the condition that, unless it be by common consent, a sale or partition thereof cannot be enforced until the expiration of the specified five-year period. It follows that the trial court rightly refused the relief prayed by appellant. Quite in point in principle is the discussion by the court in *Elberts v. Elberts*, 159 Iowa 332.

II. Appellant further argues that, as the provision of the codicil which provides for the five-year suspension of sale and partition is introduced with the words, "I desire," it should be held to be only precatory, a mere wish on his part, something left to the discretion of the devisees, but

which they were not bound to observe. It is true that compliance with a testamentary provision which is precatory only is not compulsory, but, before the court will so construe the testator's language, it must clearly appear that such was his meaning. The words, "I desire," are found very frequently in wills, and while, in some cases, they have been held to express a mere wish, as distinguished from a command, they have much more often been accorded the effect of a specific direction, which is binding upon the executor and upon the beneficiaries. For example, see the following illustrative cases, collated in Vol. 3, Words & Phrases, p. 2028: "I desire" has been held to be "the equivalent of a positive direction." *Stewart v. Stewart*, 61 N. J. Eq. 25. It should be construed as a command in polite form (*Weber v. Bryant*, 161 Mass. 400). Equivalent of the words, "I will." *Appeal of City of Philadelphia*, 112 Pa. 470. See, also, *Oyster v. Knull*, 137 Pa. 448; *Brasher v. Marsh*, 15 O. St. 111; *In re Pforr's Estate*, 144 Cal. 121; *Moseley v. Bolster*, 201 Mass. 135; *Trustees of Pembroke Academy v. Epsom School Dist.*, 75 N. H. 408.

There is nothing in the context of these words in the present will which either requires or justifies the construction which appellant places upon them.

III.   Counsel appear to think that the effect of this conclusion is to leave the title in suspense for five years from the testator's death, and that, to have made the wish or direction of the testator effective, the will should have provided for a trustee in whom the estate should vest until the removal of the restriction upon the sale of the property. But the position thus taken is not well grounded. The will became effective for all its expressed purposes immediately upon the testator's death, and title to the property passed at once to the beneficiaries therein named. They became and are tenants in common

4. WILLS: requisites and validity: restraint on alienation: non-necessity for trustees.

thereof, entitled to possession, use, rents and profits, and their rights therein are subject only to the condition that, in the absence of agreement between them, their tenancy in common cannot be changed into ownership in severalty until the end of five years from the testator's death. There is no occasion for the intervention of a trustee.

The result of this holding is that the plaintiff and defendants get precisely what the testator provided for them. In accepting the gift made to them by the deceased, they must take it with all the legal restrictions which he saw fit to place upon it, and none of them suffer any wrong because the court refuses to decree them more.

The judgment below is therefore—*Affirmed.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.